IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TRICIA LEA ARMSTRONG                                       PLAINTIFF

V.                                    NO. 12-5090

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

## <u>MEMORANDUM OPINION</u>

Plaintiff, Tricia Lea Armstrong, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB and supplemental security income (SSI) under the provisions of Titles II an XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her applications for DIB and SSI on September 23, 2008, alleging an inability to work since May 9, 2008,[2] due to "I have back problems." (Tr. 11, 58, 542). An administrative hearing was held on April 7, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 535-590).

By written decision dated November 19, 2010, the ALJ found that Plaintiff had an

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

[2]Plaintiff amended her onset date to May 9, 2008 at the hearing held before the ALJ.  (Tr. 542).

AO72A
(Rev. 8/82)

impairment or combination of impairments that were severe - degenerative joint disease status post 2 surgeries of the left shoulder, osteoarthritis and allied disorders with chronic low back and knee pain, cervical syrinx[3] with Chiari I malformation, obesity, depressive disorder NOS, generalized anxiety disorder with obsessionality, and cannabis abuse. (Tr. 13).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: the claimant can only occasionally balance and stoop. The claimant cannot climb ladders, scaffolds, or ropes, kneel, crouch, crawl, or work overhead. The claimant is able to frequently, but not constantly, reach and handle with the non-dominant left upper extremity. The claimant must avoid hazards such as unprotected heights or moving machinery, and she cannot operate motor vehicles as part of her work. The claimant must avoid concentrated exposure to extreme cold. The claimant is able to work where instructions are simple and non-complex; interpersonal contact with co-workers and the public is superficial and incidental to the work performed; the complexity of tasks is learned and performed by rote; the work is simple, routine, and repetitive; there are few variables; little judgment is required; and the supervision required is simple, direct, and concrete.

(Tr. 16).  With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs Plaintiff could perform, such as assembler and machine tender. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on March 16, 2012. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc.

---

[3]Syrinx - 1. A rarely used synonym for fistula. 2. A pathologic tubular cavity in the brain or spinal cord with a gliotic lining.  Stedman's Medical Dictionary 1923 (28th ed. 2006).

1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case isn ow ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

-3-

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ erred in his credibility findings; 2) the ALJ did not consider the combined effects of Plaintiff's impairments; and 3) The ALJ erred in his RFC findings. (Doc. 11).

### A.   Credibility Findings:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating

-4-

factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 17).  The ALJ reported that Plaintiff had mild restriction in her activities of daily living, noting that Plaintiff was able to feed and dress herself and attend to personal hygiene without assistance. (Tr. 15). He also reported that Plaintiff was able to clean, wash clothes, wash dishes, and perform some household chores although she said that she was limited by pain symptoms.  (Tr. 15). The ALJ discussed the fact that Plaintiff's treating physicians assessed Plaintiff as engaging in drug seeking behavior, that is not consistent with her allegations. (Tr. 18). This is confirmed by the medical records as well as the report of Ronald E. McInroe, Psy.D., who performed a Mental Diagnostic Evaluation on May 4, 2010, and reported that Plaintiff stated she was then using marijuana on a daily basis to help control her pain, and that she had previously used prescription medication excessively.  (Tr. 507).  It is also interesting to note that within the month of June, 2008, Plaintiff presented herself to three different medical health facilities within a period of five days, complaining of shoulder and back

-5-

pain and requesting pain medicines, which is consistent with drug seeking behavior.  (Tr. 97-99, 143-146, 221).

Based upon the foregoing, as well as the reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**B.      Combined Effects of Plaintiff's Impairments:**

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'"  (Tr. 12).  He also stated that an impairment or combination of impairments was "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  (Tr. 12).  The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings.  (Tr. 12).  The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments.  (Tr. 14).  This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments.  See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

With respect to Plaintiff's obesity, the ALJ found that Plaintiff's obesity had more than a minimal effect on her physical ability to do basic work activities and was therefore severe, consistent with SSR 85.28, and that her obesity could reasonably limit Plaintiff's walking, standing, and lifting, and carrying, or have adverse effects on other body systems. (Tr. 14).  He

AO72A
(Rev. 8/82)

also found that considered individually, or in combination with Plaintiff's other impairments consistent with SSR 02-1p, the medical evidence of record was not attended with the specific clinical signs and diagnostic findings pertaining to obesity meeting, or medically equaling in severity, an impairment set forth in the Listing of Impairments. (Tr. 14). The ALJ noted that the medical evidence did not document conditions arising from obesity that affect other body systems or prevented Plaintiff from sustaining a reasonable walking pace over a sufficient distance or using the upper extremities effectively to be able to carry out activities of daily living. (Tr. 14). Clearly, the ALJ considered Plaintiff's obesity as well.

Based upon the foregoing, as well as the reasons given in Defendant's well-stated brief, the Court finds the ALJ considered the combination of impairments.

### C.      RFC Findings:

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to

-7-

determine how those limitations affect his RFC." Id.

In this case, the ALJ found that Plaintiff had the RFC to perform sedentary work with certain limitations. (Tr. 16). The ALJ considered all of the medical records, including the records of Dr. Robert Tomlinson, Dr. James B. Blankenship, and Ron McInroe, Psy.D. (Tr. 17-18). Although Plaintiff initially declined to have an MRI of her lumbar spine in 2006, saying "I already know whats wrong with me - I don't need an MRI" (Tr. 260), x-rays of Plaintiff's cervical spine revealed no acute fractures or dislocations. (Tr. 433). On February 8, 2007, an MRI of Plaintiff's shoulder revealed a full-thickness tear of the anterior aspect of Plaintiff's left rotator cuff (Tr. 460), which, on March 8, 2007, was repaired by Dr. Tomlinson. (Tr. 354). Subsequent thereto, Plaintiff began suffering from neck pain, and on May 15, 2007, a CT of Plaintiff's cervical spine indicated that a cervical syrinx was suggested. Otherwise, there was no evidence of acute cervical spine injury. (Tr. 171-173).

On June 12, 2007, Plaintiff saw Dr. James B. Blankenship, of the Neurosurgery Spine Center, and a cervical MRI revealed a Chiari I malformation with a large upper cervical syrinx. (Tr. 469). No other abnormalities of the cervical spinal cord were noted. (Tr. 469). On June 13, 2007, Dr. Blankenship reported that the AP and lateral cervical radiograph did not demonstrate any significant spondylosis. (Tr. 471). Plaintiff did have rather marked straightening of the cervical spine with fair range of motion, but not of marked significance, and no pathologic motion was noted. (Tr. 471). As Plaintiff continued to have problems with her left shoulder, a second rotator cuff surgery was performed on December 6, 2007. (Tr. 403). By February 22, 2008, Plaintiff was doing so well with her left shoulder that she advised Dr. Tomlinson that she could do more than lift and carry 10 pounds at work. (Tr. 420). Dr. Tomlinson allowed her to

-8-

return to work with no lifting or carrying greater than 20 pounds with the left arm, and no pushing or pulling greater than 20 pounds with the left arm. (Tr. 420). Dr. Tomlinson concluded that Plaintiff had a 10% left upper extremity impairment, or a 6% total body impairment. (Tr. 421-422).

A Physical RFC Assessment was completed by non-examining consultant, Jerry Mann on January 20,2009. (Tr. 181-188). Dr. Mann found Plaintiff could perform light work, with no limitations. On February 6, 2009, Plaintiff was reported by Hastings Indian Hospital as moving her extremities well, and had a limping gait. (Tr. 203). On March 30, 2009, Hastings Indian Hospital reported that Plaintiff was a "no show" for physical therapy scheduled at the Mankiller clinic on March 3, 2009. (Tr. 194).

On July 15, 2009, a Psychiatric Review Technique form was completed by Brad Williams, Ph.D. (Tr. 337-349). Dr. Williams found that Plaintiff had a mild degree of limitation in restriction of activities of daily living, difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. (Tr. 347). He concluded that this case was rated "non-severe." (Tr. 349).

A cervical spine MRI was performed on February 26, 2010, which revealed a cord syrinx extending from the level of the cervical medullary junction to the C5-6 intervertebral disc space; no demonstration of disc protrusion, extruded disc fragment, cord compression, or demonstration of T1 shortening that would suggest cord hemorrhage; and the craniocervical junction did demonstrate cerebellar tonsillar extopia with narrowing of the subarachnoid space and may be compatible with history of chiari malformation. (Tr. 426).

As noted earlier, Dr. McInroe, conducted a Mental Diagnostic Evaluation dated May 4,

2010, and gave Plaintiff a GAF of 58.  (Tr. 508).

The ALJ gave the opinions of Plaintiff's examining and treating physicians substantial weight, and concluded that his RFC was supported by the medical evidence of record, including the findings and opinions of the Plaintiff's treating physicians. (Tr. 18). He further concluded that the evidence did not support the severity of pain symptoms Plaintiff alleged.  He referred to the records of Wilma P. Mankiller Health Clinic, which show that Plaintiff was provided a 15 day supply of Tramadol when she complained of chronic headaches and chronic neck pain on February 12, 2010, but there was no mention of knee pain, shoulder pain, or low back pain at that time. (Tr. 18, 513-514).

The Court finds that the ALJ sufficiently explained his RFC findings and gave appropriate weight to the physicians' opinions, and that there is substantial evidence to support the ALJ's RFC findings.

IV.   **Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 12th day of August, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE


-10-